**IT IS ORDERED as set forth below:**

**Date: October 20, 2026**

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>Todd Eldredge Coker,<br><br>Debtor. | CASE NO. 26-52433-BEM<br><br>CHAPTER 13 |

**ORDER**

**I. Background**

This matter is before the Court on Debtor's *Motion to Reconsider Dismissal* (the "Motion to Reconsider") [Doc. 27] and Ameriprise Financial Services, LLC's ("Ameriprise") response thereto [Doc. 28]. Debtor's case was dismissed on June 5, 2026 (the "Dismissal Order"). [Doc. 24]. Debtor filed the Motion to Reconsider on June 19, 2026, asserting that the Dismissal Order was the result of excusable neglect by Debtor's counsel. After a hearing on July 22, 2026, the Court considered the limited issue of whether Debtor was eligible for Chapter 13 based on the debt limits in 11 U.S.C. § 109(e), and ruled that he was. [Doc. 40].

On September 30, 2026, the Court held an evidentiary hearing on the issue of excusable neglect. Both parties filed pre-trial briefs. [Docs. 51, 53]. William R. Carlisle, Jr.

appeared for Debtor; Mark D. Hildreth, Deborah S. Cameron, and Jeremy M. Halpern appeared for Ameriprise; and K. Edward Safir appeared as the Chapter 13 Trustee. During the hearing, the Court heard testimony from Mr. Carlisle and took judicial notice of Ameriprise's Exhibits A1 to A14 and B to H. Additionally, Ameriprise stipulated to the factual matter set forth in the Motion to Reconsider, which included a sworn declaration by Mr. Carlisle. Ameriprise also stipulated to the factual matter in Debtor's pre-trial brief, set forth in bullet points beginning at the bottom of Doc. 53 page 10 and continuing to the top of page 12. Having considered the evidence, the applicable authorities, and the arguments of the parties, the Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**II. Findings of Fact**

Debtor was formerly employed by Ameriprise as a financial advisor. After the employment relationship ended in May 2024, a dispute arose between the parties regarding whether certain payments Ameriprise made to Debtor were bonus compensation or loans. As a result, Ameriprise initiated a FINRA (Financial Industry Regulatory Authority) arbitration proceeding in November 2024. A final hearing in the arbitration was scheduled for February 24, 2026.

On February 23, 2026, Debtor filed a Chapter 13 case, and filed a Chapter 13 plan on April 7, 2026. The plan provides for payments of $1,599 per week over a 60-month applicable commitment period. The meeting of creditors was initially scheduled for April 9, 2026, and was rescheduled to May 1, 2026.[1] The May 1, 2026 meeting of creditors was not held. According to Mr. Safir, Debtor appeared at the May 1 meeting but did not have appropriate proof of his social security number. The case proceeded to confirmation, which was scheduled for May 6, 2026. One

[1] The docket reflects that the April 9, 2026 meeting of creditors was reset for reasons other than Debtor's failure to appear. During the evidentiary hearing, Mr. Safir stated that his notes reflect no appearance by Debtor.

day prior to the confirmation hearing, on May 5, 2026, Debtor initiated adversary proceeding no. 26-5119 by filing a complaint against Ameriprise.

Two creditors have filed proofs of claim in the case. Bank of America, N.A. filed a general unsecured claim in the amount of $50,563.85, and Ameriprise filed a general unsecured claim in the amount of $557,341.20.[2]

At the May 6 confirmation hearing, Debtor and the Trustee agreed how to proceed, and counsel for the Trustee made the following announcement on the record: “This matter will be placed on 10-day status for funding. If the Debtor complies, Debtor’s counsel can renotice both the 341 and confirmation hearings.” [5/6/26 Audio Tr. at 9:55:50 am to 9:55:58 am]. On May 20, 2026, Mr. Carlisle emailed counsel for the Trustee to notify her of the filing of the adversary proceeding and to ask whether it would affect the parties’ agreement as to how or when the meeting of creditors would be rescheduled. [Doc. 27 ¶ 9]. On May 22, 2026, the Friday before Memorial Day, counsel for the Trustee responded by email, stating “[a]s the funds have now been posted, I have copied Ms. Shirley Hill in our office to provide you with dates to re-notice the 341 and confirmation hearing.” [Id. ¶ 10]. Ms. Hill sent Mr. Carlisle an email on May 22, 2026 at 2:19 pm with the proposed dates and times for renoticing the meeting of creditors and the confirmation hearing. [Id. ¶ 11]. Mr. Carlisle did not see Ms. Hill’s email until June 2, 2026, because he had a number of renovation projects going on at his house that made working in his home office challenging. As a result he was receiving emails on his cell phone rather than on his computer. Ms. Hill’s email did not appear as a new email on his phone, and Mr. Carlisle did not notice it for several days after it was sent.

---

[2] The case was dismissed after the May 4, 2026 bar date for non-governmental claims but before the August 24, 2026 deadline for governmental claims.

On June 4, 2026, the Trustee filed a *Supplemental Report Following May 6, 2026 Confirmation Hearing* [Doc. 23], in which the Trustee requested dismissal of the case because Debtor had failed to renotice the meeting of creditors and the confirmation hearing within 10 days following the May 6, 2026, confirmation hearing. Mr. Carlisle received notice of the filing shortly thereafter,[3] and the dismissal order was entered on June 5, 2026, at 10:46 am. The notice resetting the meeting of creditors and the confirmation hearing was filed by Mr. Carlisle on June 5, 2026 at 12:46 pm. Mr. Carlisle received notice of the dismissal order on June 6, 2026.

As noted above, Debtor filed an adversary complaint against Ameriprise on May 5, 2026 (the "Adversary" or "AP"). In the Adversary, Debtor alleges that Ameriprise offered him bonus compensation in the amounts of $600,000 and $130,000, and that Debtor satisfied all the conditions for payment of the bonuses. [AP Doc. 1 ¶ 10-11[4]]. Debtor was then informed that the bonuses would be paid in monthly installments as deferred compensation. [Id. ¶ 12]. Ameriprise then presented Debtor with promissory notes representing loans to Debtor in the amount of the bonuses, and paid Debtor a lump sum in the amount of the bonuses. [Id. ¶ 13-15]. To account for the loans, Ameriprise periodically increased the amount shown as Debtor's earnings on Debtor's paychecks, but those increased amounts were not paid to Debtor. [Id. ¶ 17-18]. Based on these allegations, Debtor asserts claims for (1) disallowance of Ameriprise's proof of claim because the loans are unenforceable under federal tax law; (2) a determination under 11 U.S.C. § 505 of the amount of taxes that may be imposed on the payments Debtor received from Ameriprise; (3) conversion under O.C.G.A. § 51-10-1 for liquidating and seizing Debtor's Ameriprise brokerage

---

[3] In the Motion to Reconsider, Mr. Carlisle states that he received the notice "[o]n the morning of 06/04/26". [Doc. 27 ¶ 15]. However, the notice was not filed by the Trustee until 2:03 pm on June 4, 2026. During the evidentiary hearing, Mr. Carlisle testified that he received the notice about two hours before the dismissal order was entered and that he does not always get ECF notices immediately; rather they may come through later in the day or the following day.

[4] The Adversary complaint has two paragraphs numbered 10.

account after declaring Debtor to be in default on the promissory notes; and (4) attorney fees under O.C.G.A. § 13-6-11.

Copies of the two promissory notes that are at issue in the Adversary are attached as exhibits to Ameriprise's proof of claim and to Ameriprise's motion to dismiss in the Adversary. [Claim 2-1 Part 3; AP Docs. 4-1 and 4-2]. Both notes contain a provision that any disputes between the parties will be arbitrated pursuant to the FINRA Code of Arbitration Procedure for Industry Disputes.

**III. Conclusions of Law**

Debtor seeks relief from the Dismissal Order under Federal Rule of Bankruptcy Procedure 9024, which makes Federal Rule of Civil Procedure 60 applicable in bankruptcy cases. Specifically, Debtor asserts that the Dismissal Order was entered due to counsel's excusable neglect, and therefore seeks relief under Rule 60(b)(1) (authorizing the Court to grant relief from a final order due to "mistake, inadvertence, surprise, or excusable neglect"). The Supreme Court has established a four-factor test for determining whether a party has shown excusable neglect: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993). The *Pioneer* factors apply to motions under Rule 60(b)(1). *Cheney v. Anchor Glass Container Corp*., 71 F.3d 848, 849-50 (11th Cir. 1996).

In the context of Rule 60(b)(1), the Eleventh Circuit evaluates the *Pioneer* factors within the framework of a three-part test that considers (1) whether the movant has "a meritorious defense that might have affected the outcome"; (2) whether the non-moving party will be

prejudiced if the motion is granted; and (3) whether the movant has a good reason for failing to timely act. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (considering whether to vacate a default judgment based on excusable neglect); *Coniglio v. Bank of Am., NA*, 638 F. App'x 972, 974 (11th Cir. 2016) (considering whether to vacate a default judgment based on excusable neglect). While the "meritorious defense" factor may not be relevant to every Rule 60(b)(1) motion, and generally has been applied to orders in an adversary proceeding, when, as here, a case-dispositive order is at issue, it warrants consideration. *See Dillworth v. Guerra (In re Garcia)*, 627 B.R. 923, 927 (Bankr. S.D. Fla. 2020) (declining to consider the meritorious defense factor on a motion to reconsider a sanctions order entered due to failure to comply with discovery obligations).

In applying *Pioneer*, the Eleventh Circuit has said that "the Supreme Court accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration[.]" *Cheney*, 71 F.3d at 850. However, "the *Pioneer* and *Cheney* decisions do not alter the fact that a determination of excusable neglect is an equitable one that necessarily involves consideration" of all the factors. *Worldwide Web*, 328 F.3d at 1297. As such, it is a flexible standard that takes "account of all the relevant circumstances" and is not a mechanical test. *Fisher Island Ltd. v. Fisher Island Inv., Inc.*, 518 F. App'x 663, 666 n.1 (11th Cir. 2013); *Advanced Estimating Sys. Inc. v. Riney*, 77 F.3d 1322, 1324 (11th Cir. 1996).

Mistakes of law by an attorney do not constitute excusable neglect and, generally, neither does "inadvertence, ignorance of the rules, or mistakes construing the rules," *Cordell v. Pacific Indem. Co.*, 335 F. App'x 956, 960 (11th Cir. 2009) (internal quotation marks and citation omitted). However, excusable neglect "may include, when appropriate, late filings caused by inadvertence, mistake, or carelessness under certain circumstances." *Locke v. SunTrust Bank*, 484

F.3d 1343, 1346 (11th Cir. 2007) (citing *Advanced Estimating Sys*., 77 F.3d at 1324). Thus, there is a distinction between mistakes of law and mistakes of fact when analyzing excusable neglect. *Safari Programs, Inc. v. CollectA Int'l Ltd*., 686 F. App'x 737, 744 (11th Cir. 2017) (citing *United States v. Davenport*, 668 F.3d 1316, 1324 (11th Cir. 2012)). For example, in *Cheney*, the Eleventh Circuit found excusable neglect when the failure of counsel to timely demand a trial was due to "a failure in communication between the associate attorney and the lead counsel. The circumstances of the error were obviously within counsel's control, but their noncommunication and resulting inaction amounts only to an 'omission[ ] caused by carelessness.'" *Cheney*, 71 F.3d at 850 (quoting *Pioneer*, 507 U.S. at 388, 113 S. Ct. at 1495). Nevertheless, "an attorney's negligent failure to respond to a motion does not constitute excusable neglect, even if that attorney is preoccupied with other litigation." *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986). Even so, "courts are chary of dismissing actions on account of attorney inadvertence in non-abusive situations." *Id.*

Ameriprise contends that Debtor has no "meritorious defense" to dismissal of the bankruptcy case because it was not filed in good faith as it involves a two-party dispute and is an attempt to avoid FINRA arbitration. Ameriprise argues it would be prejudiced if the case is reinstated because it was filed on the eve of the final hearing in the FINRA arbitration after two years of litigation, and the Adversary raises claims that could have been asserted in the arbitration.[5] Finally, Ameriprise argues that Debtor cannot establish excusable neglect because Mr. Carlisle's

---

[5] The promissory notes at issue in the dispute between the parties both include provisions that state: "Employee agrees that any claims which Employee may have against Ameriprise shall not be raised as a counterclaim to the Stipulated Award Claim, but instead shall be raised in a separate arbitration proceeding to be initiated by Employee. Employee knowingly and affirmatively agrees to waive all rights to combine claims against Ameriprise under FINRA Code of Arbitration Procedure Rule 133314." [Claim 2-1 Part 3 at 3, 12].

reasons for failing to timely renotice the meeting of creditors and confirmation hearing boil down to him being busy.

Starting with reason for the delay in renoticing hearings, if it were solely attributable to Mr. Carlilse's inability to manage his professional schedule while facing increased, but temporary, demands on his personal time, the neglect might not be excusable. *See CLM Trust LLC v. Pavel (In re Pavel)*, No. 25-10740-PMB; AP No. 25-1014, 2026 WL 884847, at *10-11 (Bankr. N.D. Ga. Mar. 31, 2026) (Baisier, J). But, here, there is the additional factor of delayed communications between Mr. Carlisle and the Trustee. The Trustee's office did not provide Mr. Carlisle with dates for renoticing the meeting of creditors until 16 days after the May 6 confirmation hearing. There is also no evidence that Mr. Carlisle reached out to the Trustee for dates prior to his May 20, 2026 email. Nonetheless, the Court finds that these circumstances are more similar to the attorney miscommunication in *Cheney* rather than an attorney's failure, or inability, to manage his caseload. *Pavel*, 2026 WL 884847, at *11. But that is not the end of the inquiry. The Court must also consider all other relevant factors, including the prejudice to the parties, judicial efficiencies, and any meritorious defenses Debtor has to dismissal of the case. Also relevant here is whether the Adversary is subject to the policy preference for enforcing arbitration agreements or whether it fits within an exception to that policy.

Under 11 U.S.C. § 1307(c), a Chapter 13 case is subject to dismissal for cause, including that that the case was filed in bad faith. *See Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1263 (11th Cir. 2013) (noting that dismissal for cause under "§ 1307(c) includes bad faith or lack of good faith"). In conducting a good faith analysis, courts consider the totality of the circumstances. *Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885, 888-89 (11th Cir. 1983); *Brown v. Gore (In re Brown)*, 742 F.3d 1309,

1317 (11th Cir. 2014). "[C]ourts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions[.]'" *Phoenix Picadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir. 1988) (quoting *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir.1984)) (Chapter 11 cases); *see also In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986) (in the context of determining whether a Chapter 13 plan was filed in bad faith under 11 U.S.C. § 1325(a)(3), "[i]f the court discovers unmistakable manifestations of bad faith, … confirmation must be denied. Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.").

Courts have listed numerous factors relevant to the good-faith analysis. *Kitchens*, 702 F.2d at 888-89. These include cases involving a two-party dispute in which the debtor "faces no threat from any of its other purported creditors[.]" *In re Outta Control Sportfishing, Inc.*, 642 B.R. 180, 185 (Bankr. S.D. Fla. 2022) (internal quotation marks and citation omitted). The "timing of the filing of the petition" and whether it was filed "strictly to circumvent pending litigation" are also relevant. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989) (considering whether to grant relief from the automatic stay due to bad faith).

Here, although Bank of America has filed a proof of claim, the case is essentially a two-party dispute between Debtor and Ameriprise. During the evidentiary hearing, Mr. Carlisle conceded the case was filed to move the dispute with Ameriprise into a different forum because he believes Debtor is at a disadvantage in the FINRA arbitration. The bankruptcy case was filed one day before the final hearing in the FINRA arbitration. These factors weigh in favor of finding

that the bankruptcy case was filed in bad faith. Although Debtor can point to factors showing good faith,[6] they are outweighed by the indicia of bad faith. As stated by the court in *Dixie Broad*, "[t]he Bankruptcy Code is not intended to insulate financially secure [debtors] from the bargains they strike." 871 F.2d at 1028. Furthermore, the particular circumstances that show bad faith in this case also demonstrate prejudice to Ameriprise as they directly affect, and were intended to affect, Ameriprise's ability to prosecute the arbitration, an arbitration that Ameriprise bargained for and to which Debtor agreed.

In the Adversary, Ameriprise has filed a motion to dismiss based in part on the federal policy favoring enforcement of arbitration provisions. *The Whiting-Turner Contracting Co. v. Electric. Mach. Enters., Inc. (In re Electric Mach. Enters., Inc.)*, 479 F.3d 791, 795 (11th Cir. 2007); Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. Under the FAA, a contractual provision requiring arbitration is "valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. While Congress can override this mandate, "unless Congress has clearly expressed an intention to preclude arbitration of the statutory claim, a party is bound by its agreement to arbitrate." *Elec. Mach.*, 479 F.3d at 795 (quoting *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27, 107 S. Ct. 2332, 2337 (1987) and *Davis v. S. Energy Homes, Inc*., 305 F.3d 1268, 1273 (11th Cir. 2002)). The burden is on the party opposing arbitration to prove that Congress intended to make an exception for its claims. *McMahon*, 482 U.S. at 227, 107 S. Ct. at 2337.

The Court considers three factors in determining whether Congress intended to override the enforcement of an arbitration agreement: "(1) the text of the statute; (2) its legislative

---

[6] Debtor asserts the following facts show the case was filed in good faith: (1) a plan that proposes substantial payments over 60 months; (2) accurate schedules that disclose the dispute with Ameriprise; (3) a plan that modifies no secured claims and gives no preferential treatment to insiders; (4) the Ameriprise debt is ordinary contract debt that Ameriprise has not alleged would be nondischargeable in a Chapter 7 case; (5) this is Debtor's first bankruptcy filing; and (6) Debtor paid all accrued plan payments in full before the case was dismissed. [Doc. 53 at 16].

history; and (3) whether 'an inherent conflict between arbitration and the underlying purposes [of the statute]' exists." *Davis*, 305 F.3d at 1273 (quoting *McMahon*, 482 U.S. at 227, 107 S. Ct. at 2338). The Eleventh Circuit has found "no evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code." *Elec. Mach.*, 479 F.3d at 796. Therefore, the only open issue is that of conflict between arbitration and the purpose of the Bankruptcy Code. *Id.*

> Courts addressing the issue of whether arbitration inherently conflicts with the Bankruptcy Code distinguish between core and non-core proceedings. ... In general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding. ... However, even if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code.

*Id.* (internal citations omitted). Proceedings that invoke a right created by the Bankruptcy Code or that can only arise in bankruptcy are core, while those that do not invoke a right under the Bankruptcy Code and can exist outside of bankruptcy are non-core. *Continental Nat. Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir. 1999) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987)); 28 U.S.C. § 157(b)(2).

Here, Debtor's Adversary asserts an objection to Ameriprise's proof of claim, a claim for determination of tax liability under 11 U.S.C. § 505, and state law claims for conversion and attorney fees. The claim objection is part of the claims allowance process, which is a core proceeding. 28 U.S.C. § 157(b)(2)(B). The claim for determination of tax liability is a right under § 505 of the Bankruptcy Code and is likewise core. The claims for conversion and attorney fees arise under state law and would exist outside of bankruptcy and are, therefore, non-core. Thus, the Adversary presents a mix of core and non-core claims, which requires the Court to determine

whether enforcing the arbitration agreement between the parties would conflict with the purposes of the Bankruptcy Code.

Although the objection to claim and determination of tax liability are core on their face, the Court can look beyond labels to the true substance of the claims. *Chambers v. Park Square Enter., LLC (In re J.E.L. Site Dev., Inc.)*, 646 B.R. 338, 346 (Bankr. M.D. Fla. 2022) (citations omitted). Debtor's claim objection is at heart a contract claim, and the § 505 claim is dependent on the outcome of the contract claim as well as being subject to abstention. *See Hospitality Ventures/Lavista v. Heartwood 11, L.L.C. (In re Hospitality Ventures/Lavista)*, 314 B.R. 843, 861 (Bankr. N.D. Ga. 2004) (Bonapfel, J.). As evidenced by the fact that this dispute arose prepetition and was largely litigated prepetition, the contract claim and any resulting tax liability can be decided outside of bankruptcy. "[U]ltimately, the dispute is whether [Ameriprise] owes the Debtor money or the other way around." *J.E.L. Site Dev*., 646 B.R. at 347; *see also Carn v. Wall & Assoc., Inc. (In re Tomberlin)*, No. 16-10168-DHW, AP No. 16-01115, 2017 WL 410337, at *4 (Bankr. M.D. Ala. Jan. 30, 2017) ("Where there is a mixture of core and non-core claims in one proceeding, the court should look to which issue predominates.").

Even if the Court analyzed the claims as core, Debtor has not articulated any reason that allowing the disputes to be determined in arbitration would conflict with bankruptcy policy. "The objectives of the Bankruptcy Code relevant to this inquiry include the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Tomberlin*, 2017 WL 410337, at *4 (internal quotation marks and citations omitted). Debtor's argument is that the Bankruptcy Court would be a friendlier or fairer forum than a FINRA arbitration, and that an adverse result in the arbitration would be extraordinarily burdensome to

Debtor. Debtor's counsel asserts that amounts awarded by a FINRA arbitration order must be paid within 30 days, otherwise the party's FINRA licenses are suspended until the award is paid. As a result, a financial advisor such as Debtor cannot work if he is unable to pay the arbitration award. Debtor filed the bankruptcy case to avoid this potential result. But, this just amounts to forum shopping in hopes of a more favorable outcome and does not show a conflict with the purposes of the Bankruptcy Code; rather it contributes to the evidence of bad faith filing by Debtor that is prejudicial to Ameriprise and detrimental to judicial efficiencies

While this case was not dismissed for bad faith, the circumstances here are analogous to those in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S. Ct. 1105 (2007). In that case, a Chapter 7 debtor sought to convert his case to Chapter 13. The Court ruled that such conversion could be properly denied if, upon conversion, the Chapter 13 case would be subject to dismissal for cause under § 1307(c) due to the debtor's prepetition bad faith, because in such circumstances the debtor does not qualify to be a Chapter 13 debtor. *Id.* at 373-74, 127 S. Ct. at 1111. The Court stated that

> the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

*Id.* at 375, 127 U.S. at 1112 (footnote omitted). Similarly, here, the Court need not reinstate a Chapter 13 case if doing so merely postpones subsequent dismissal for cause. Here, the totality of the circumstances shows that the bankruptcy case was filed in bad faith, such that Debtor cannot show a meritorious defense to dismissal of the case. While Mr. Carlisle has shown an acceptable reason for failing to timely renotice the meeting of creditors and confirmation hearing and acted promptly after the case was dismissed, the prejudice to Ameriprise of granting the Motion to

Reconsider outweighs the prejudice to Debtor of denying it, and there are no judicial efficiencies to be served where the primary issue in the case cannot be resolved in this Court. For these reasons, Debtor has failed to establish excusable neglect. Accordingly, it is

ORDERED that the Motion to Reconsider is DENIED.

**END OF ORDER**

**Distribution List**

William R. Carlisle Jr., Esq.
Carlisle Law Firm, LLC
P.O. Box A
Winder, GA 30680

Todd Eldredge Coker
1134 Haven Glen Lane
Brookhaven, GA 30319

Sonya Gordon Buckley
Office of Trustee-K. Edward Safir
285 Peachtree Center Ave., N.E.
Suite 1600
Atlanta, Georgia 30303

Mark D. Hildreth
SCHUMAKER, LOOP & KENDRICK
240 South Pineapple Avenue
9th Floor
Sarasota, FL 34236

Deborah Shelles Cameron
MOZLEY, FINLAYSON & LOGGINS
LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, GA 30338